**In re Arthur Herbert HUNT, Debtor.**

**Bankruptcy No. 84–00053.**

United States Bankruptcy Court,
D. Hawaii.

Aug. 28, 1985.

Ray Olmstead, Kailua-Kona, Hawaii, for Richard L. Tretheway.

La Vonne Harrison, Huntington Beach, Cal., pro se.

Thomas Culbertson, Honolulu, Hawaii, for debtor.

George Okamura, Honolulu, for Federal Land Bank Ass'n of Hawaii.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER RE STAY

JON J. CHINEN, Bankruptcy Judge.

The Motion for Relief from Automatic Stay and for Adequate Protection filed herein on June 14, 1985, by Lavonne Harrison, Esq. and Richard L. Tretheway, Esq. (hereinafter collectively referred to as "Movants") came on for hearing before the undersigned Judge on July 29, 1985. At the hearing, Lavonne Harrison, Esq. appeared on her own behalf, Ray Olmstead, Esq. appeared on behalf of Richard L. Tretheway, George Okamura, Esq. appeared on behalf of the Federal Land Bank Association of Hawaii, a secured creditor, and Thomas M. Culbertson, Esq. appeared on behalf of the Debtor. The Court, having considered the testimony of the witnesses, the exhibits, the arguments of counsel, and the pleadings on file herein, makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Arthur Herbert Hunt (the "Debtor") and other members of his family are the owners in fee simple of that certain property located in Kona, Hawaii, identified as TMK 7-3-02-23 and 27.

2. The property consists of two parcels totaling 18.19 acres, directly *mauka* (towards the mountain) of the Kailua-Kona Airport, on which two homes and various farming structures are located.

3. The Movants previously filed a motion for relief from the automatic stay, which was denied by Order filed on July 25, 1984 on the grounds that the Movants' appraisal (which is presented again in support of this motion) showed that the Debtor had equity in the property over and above the secured indebtedness. The Court's Order of July 25, 1984 provided that the Movants could seek relief from the stay again based upon a change in circumstances.

4. The Court finds that, since the hearing which resulted in the order of July 25, 1984, the following changes in circumstances have occured:

    a. Interest on the secured indebtedness and the real property taxes has continued to accrue and has not yet been paid.

    b. Certain improvements have been made on the property.

    c. Interest rates have decreased on financing available for real property.

    d. The real estate market in the Kailua-Kona area has improved.

The first of the foregoing circumstances would tend to diminish the Debtor's equity in the property and the protection of the secured creditors; however, the latter three would tend to increase equity and protection.

5. The Court makes the following findings with regard to the secured indebtedness against the property as of July 17, 1985:

    a. Property taxes, including interest and penalties, total $11,717.00.

    b. The Federal Land Bank Association of Hawaii holds a first mortgage lien

against the property securing a total indebtedness of $224,640.49 as of July 19, 1985, broken down as follows: $164,270.41—principal, $60,202.02—interest, $198.06—advances. The parties stipulated to these amounts for the sole purpose of this motion. The per diem amount is $49.00. The Federal Land Bank has claimed additional amounts for default interest and other charges which are disputed by the Debtor and, by stipulation of the parties, are not considered for the purpose of this motion.

c. Puuwaawaa Ranch holds a mechanics' lien in the amount of $12,000.00, as to which no judgment has yet been rendered. The claim for interest is challenged by Debtor.

d. Movant Harrison has a claim which is secured by a purchase money security in the principal amount of $58,872.00, together with accrued interest in the amount of $18,544.00.

e. Movant Tretheway has a claim which is secured by a purchase money security interest in the principal amount of $38,000.00, together with accrued interest in the amount of $13,996.00.

f. There are various other secured debts as listed in Debtor's Schedule A–2 in the principal amount of $58,000.00.

g. The total amount of the secured claims as of July 19, 1985 exceeded $435,000.00.

6. With respect to the fair market value, the Court finds as follows:

a. Peter C. Crackel ("Crackel") was the only qualified real estate appraiser who testified as to the fair market value of the subject property.

b. The testimony of Kelly McCable has been disregarded because she is not an appraiser and because she has not inspected the property.

c. Crackel rendered three separate appraisals on the subject property. The first appraisal was made on January 2, 1979 at the request of Mr. Joseph Hunt and the Debtor, two of the co-owners of the subject property. After a thorough on-site inspection of the subject property, Crackel estimated the fair market value as of January 2, 1979 to be $590,000.00.

d. Crackel made a second appraisal of the subject property on May 2, 1984 "pursuant to and in compliance with phone conversations with you, [Tretheway] Mr. Art Hunt, and Mr. Tom Colbertson [sic]." Crackel's opinion was based on his first appraisal, the improvements made to the property since then and the market conditions in May 1984. He estimated the fair market value to be $607,200.00 on terms and $455,400.00 in cash. Crackel estimated that the discount for a cash sale varied from 15 to 40%, and he used a 25% discount. Crackel last saw the subject property in late '83 or early '84 at the invitation of the Hunts to see the improvements made on the subject property.

e. The third appraisal was by letter made as of July 16, 1985, at which time Crackel's opinion was that the fair market value remained at $607,000.00 on terms and $455,000.00 in cash. However, he acknowledged that any improvements made on the property since May 2, 1984 might increase the value of the subject property on a "dollar for dollar basis".

f. The testimony of Debtor and the exhibits received into evidence clearly show that, following the last visit to the subject property by Crackel, improvements have been made to the subject property. In addition to 4 water cachement facilities, there is a water meter at the lower end of the property from which the Hunts are able to draw on county water when necessary.

g. Joseph Hunt's home, which was 45% completed in 1979, has been completed, and only the painting on the outside is unfinished.

h. In addition, the stables for the horses and the road leading to the homes have been improved. And, the Debtor estimated the fair market value to be $900,000.00.

4. With the added improvements on the property, the more stabilized economy in

Kona, Hawaii, and the lower rate of interest, the Court finds the fair market to be $675,000.00 not $900,000.00 as overestimated by Debtor nor $607,600.00 as underestimated by Crackel who was not aware of the added improvements since May 2, 1984. The Court further finds the cash sale value to be $540,000.00, based on a 20% discount.

5. Debtor has agreed that it is best for all concerned that the property be sold as soon as possible for the best price obtainable. Debtor has been trying to market the property for several years but, because the price requested has been far above the appraised value, no offer has been received.

## CONCLUSIONS OF LAW

1. The Debtor has equity in the property, and the Movants have not established entitlement to relief from the stay pursuant to 11 U.S.C. § 362(d)(1).

2. Since the Debtor has been unable to sell the property himself pre- and post-petition, the Court concludes that there is good cause pursuant to 11 U.S.C. § 362(d)(1) to modify the stay in the following manner:

IT IS HEREBY ORDERED:

1. The Movants' motion for relief from the stay, for the purpose of selling the property at a state court ordered public auction, is hereby denied.

2. The Debtor is ordered to attempt to sell the property as follows:

a. Within two weeks from the date hereof, Debtor is to obtain the written consent of the co-owners to sell the property pursuant to the terms of this order.

b. After the necessary written consent is obtained, the property is to be listed with an established real estate agent in the Kona area as may be agreeable to the Debtor and at least one of the Movants. The listing agreement with said agent shall be submitted to the Court for approval without a hearing, unless a hearing is necessary under paragraph 2c.

c. The property is to be listed at a price which is agreeable to the Debtor and at least one of the Movants. If such agreement cannot be reached, any of the three (either of the Movants or the Debtor) may bring the matter before the Court for a hearing on the listing price.

d. All offers on the property are to be submitted to the Debtor and both Movants, with a copy to the Court.

e. Any offer acceptable to the Debtor or either of the Movants may be submitted to the Court for hearing on approval.

f. The Court's order approving any sale will also order the appropriate distribution of the sale proceeds.

g. If within two weeks from the date hereof, Debtor fails to obtain the written consent of the co-owners and all other necessary parties to sell the property, the stay will be lifted as to Debtor's interest in the property and Movants may then pursue their remedies in the state court with reference to Debtor's interest in the property. An affidavit from either Movant filed with the Court stating that such consent has not been obtained as required herein will be sufficient to have the Court enter an order modifying the stay.

h. Six months after the listing agreement is approved, if the property has not been sold or if a bona-fide offer has not been submitted to the Court for approval, the automatic stay will be lifted, and Movants shall be entitled to pursue their remedies in the state court with regard to this property.